# THE WAILUKU SUGAR COMPANY *v.* THE HAWAII-AN COMMERCIAL AND SUGAR COMPANY.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED JUNE 18, 1901.        DECIDED AUGUST 26, 1901.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A portion of the description of a kuleana in a Land Commission Award reads: "Hema 36° Ko. 1.22 Kh. e pili ana me Kahawai" (referring to the Iao Stream, Wailuku, Maui). Held, under the circumstances of the case as stated in the opinion, that the bed or channel of the stream is not included in the land awarded.

OPINION OF THE COURT BY PERRY, J.

(Frear, C.J., dissenting.)

This is a bill in equity for an injunction to restrain the respondent from digging a tunnel under, through or across certain land, situate at Wailuku, Maui, of which the complainant is alleged to be the owner.

It is undisputed in this case that the complainant is the owner of the land described in Land Commission Award 3231, Apana 1, issued to Opunui, and situate in said Wailuku. One of the sides of this Kuleana is described in the Award as running, "Hema 36° Ko. 1.22 Kh. e pili ana me Kahawai" (meaning the Iao stream). Complainant contends that by virtue of this element of the description the Award conveys the title to the land to the centre or thread of the stream, while the claim of the respondent is that the bed of the stream as covered at high water or in times of freshets is not included in the grant. It is clearly

shown by the evidence adduced at the trial below that the tunnel is under the bed of the stream as it exists at high water or in times of freshets and outside of the boundaries of the Kuleana if the courses and distances alone are followed in locating such boundaries; and it is only by adopting the rule contended for by the complainant, to-wit, that where an instrument of conveyance describes land as being bounded "by" or "along" a stream the grantee thereby obtains title as far as the centre or thread of the stream, that the tunnel can be held to be on or under the complainant's land.

The rule referred to is at best one of construction only. 2 Devlin, Deeds, Sec. 1025. It is not a rule of law, although some courts would seem to so regard it judging from some expressions used in the decisions and from the extent to which its application has been carried. Two reasons are usually assigned for the rule, one of which is that in a great majority of cases by its adoption the intention of the grantor will be effectuated. The second, one of policy, is thus stated by Redfield, J., in *Buck v. Squiers*, 22 Vt. 484: "Its chief object is to prevent the existence of innumerable strips and gores of land along the margins of streams and highways, to which the title for generations shall remain in abeyance, and then, upon the happening of some unexpected event, and one, consequently, not in express terms provided for in the title deeds, a bootless, almost objectless, litigation shall spring up, to vex and harass those who, in good faith, had supposed themselves secure from such embarrassment."

Nevertheless, it remains true, in spite of these considerations of policy that one who owns land to the centre of a stream or inclusive of the whole stream may convey to another the portion of such land extending to the bank only and exclusive of the bed of the stream. "It is equally competent for the riparian proprietor to sell his upland to the top or edge of the bank of a river and to reserve the stream or flats below high water mark, if he does it by clear and specific boundaries. * * * He may also convey the bed of a stream separate from the lands which bound it."—3 Kent's Com., p. 435. See also *Paine v. Storage*

*Co.,* 71 Fed. 630; *Hatch v. Dwight,* 17 Mass. 288, 289; and *Bradford v. Cressey,* 35 Me. 13.

Further, the rule, as stated by practically all the authorities, is subject to the limitation that the presumption that the grantor intended to convey to the thread of the stream is *prima facie* only and may be rebutted,—in other words, that if it clearly appears from the language of the conveyance or from any map or plat made a part thereof or, perhaps, from other circumstances, that it was the intent of the grantor to convey only as far as and not including the bed of the stream, the deed will be so construed as to carry out that intent.

Assuming, then, but not deciding, that the presumption hereinabove referred to arises in such cases, is there sufficient in the evidence in this particular case to rebut it? We are of the opinion that there is. The word "Kahawai" means not only the flowing stream but also the bed or channel of the stream including the portion of such channel covered only in times of high water or of freshets. "E pili ana" means "adjoining" and the use of these words indicates that the object referred to as being adjoined is excluded. The same expression, "e pili ana," is used in every one of the ten courses in the description, referring in each instance to pieces of land which, clearly, it was intended to exclude. We believe that in the call under consideration the words were employed in the same sense and that they show an intent to exclude the "Kahawai." Further, the testimony shows that, regarding the bed of the stream as excluded and following the courses and distances given, the description closes and is consistent with itself and that the shape of the Kuleana and the references in its description to adjoining pieces, are such that an initial point for the survey elsewhere than on the side towards the stream can be and has been definitely located on the ground. With the starting point thus determined and the courses and distances being followed, the line on the side in question adjoins and excludes the channel of the stream.

A diagram, of which a copy is here inserted, is contained in the original Award, Number 3231, issued to Opunui in 1852,

over the signatures of the members of the Land Commission and may, therefore, be considered as a part of the Award itself. It seems to us that the position of the line herein marked AB with reference to the drawing representing the stream, confirms our construction of the language of the description and shows beyond doubt that the actual intention of the parties was to exclude the bed of the stream.

The decision in the case of *Notley v. Kukaiau Plantation Co.*, 11 Haw. 525, does not lay down any general rule which can be said to control in the case at bar. That case was decided upon its own particular circumstances and the Court specifically said, "Each case must be considered by itself."

In our opinion the complainant has not shown title to the land crossed by the tunnel.

As to whether or not, under the circumstances of this case, a court of equity may determine such a question of title as is involved herein, we need not say. If it has no jurisdiction, the bill must for that reason be dismissed; on the other hand, if it has such jurisdiction, still, under the views held and above expressed by us on the main issue, the same result is reached. So, also, the other questions argued need not be considered.

For the reasons hereinabove stated, the decree appealed from is affirmed.

*Kinney, Ballou & McClanahan* for complainant.

*A. S. Hartwell* for respondent.

### DISSENTING OPINION OF FREAR, C.J.

I respectfully dissent. The words "e pili ana" mean "joining," "coinciding" or "uniting with" and are at least the equivalent of the word "along." The word "kahawai," although it may etymologically mean "water-mark" and may be used to denote a dry gulch in which there was formerly a stream, undoubtedly was used here in the sense of "stream." The boundary would, then, be described (translating) as: "South 36° West 1.22 chains along the stream."

It is true, the words "e pili ana" are used in describing the other boundaries as being along adjoining lands and, of course, would not carry title to the center of those lands, but it does not follow that they would not carry title to the center of the stream. The word "along" and other equivalent words are construed with a similar difference of meaning according as they are used in connection with adjoining lands or in connection with streams, for the rule is founded on the supposed intention of the parties and it could not reasonably be supposed that there was an intention to convey to the center of an adjoining land even if it were owned by the grantor, while it might reasonably be supposed that there was an intention to convey to the center of the stream when the grantor owned to the center.

The diagram on the face of the Award is entitled to comparatively little weight. It ought not to control the clear language of the Award. The strip shown between the kuleana and the stream is very narrow, and the diagram evidently does not pretend to give the boundary of the stream accurately.

It is true also that the specified courses and distances do not carry the boundary to the center of the stream. But such is usually the case, for surveyors as a rule do not go into the mid-

dle of streams. They survey the land portion of a tract that extends into a stream. This has often been recognized by the Federal and State Supreme Courts.

The real question, it seems to me, is whether the courses and distances should be held to control the natural monument, the stream. What I should hold in this case if this question were entirely new I need not say. It seems to me that the rule is too well settled for reexamination now. Where land is bounded "along a stream," it goes to the center even though the courses and distances would not take it there. *Schuyler v. Phoenix Ins. Co.*, 134 N. Y. 355; *Kent v. Taylor*, 64 N. H. 489; *Lampman v. Van Alstyne*, 94 Wis. 417. See, generally, Gould, Waters, Secs. 194, 197; 1 Jones, R. P. Secs. 490-493; 2 Devlin, Deeds, Secs. 1024, 1025. The general rules of construction in cases involving questions of this kind have been recognized by this court. *Notley v. Kukaiau Plantation Co.*, 11 Haw. 525. To depart for light reasons from those rules, which have almost become rules of property, would tend to bring uncertainty into the law of real property.

But, after all, does it make any difference whether the title goes to the stream or to the center of the stream, that is, whether the boundary is along the stream literally speaking or along the center of the stream legally speaking? It certainly is along the *stream*, not along the bank. The stream and not the bank or any other form of land is the boundary. Even if we give the words "e pili ana" the same effect in connection with adjoining lands, and give the courses and distances full effect, still the boundary would be at least the edge of the stream. If the edge of the stream, not the edge of the bank, is the boundary, the boundary will go with the stream and if the stream diminishes in width owing to a diminution in the quantity of water, which has probably been the case here, or if it gradually changes its course, the boundary changes with it according to well known rules of law. So it really makes no difference so far as this case is concerned whether the boundary is the edge of the stream or the center of the stream. The stream is a natural monument. It is

clearly mentioned as such in the words of this Award.   I do not see that sufficient appears to justify us in disregarding it.

I understand that the Circuit Judge was of the opinion that the land went to the center of the stream but that he refused the injunction on the ground that the injury caused by the tunnel to the plaintiff's land would be too small to justify the granting of the injunction.   I need not express an opinion upon this latter point, in view of the opinion of the majority upon the question of boundary.