STATE OF NORTH CAROLINA v. BYNUM H. PARSONS

No. 8825SC363

(Filed 6 December 1988)

**Criminal Law § 26.7— death of unborn child—indictment for manslaughter—second indictment barred by collateral estoppel**

  Collateral estoppel applied to require dismissal of a manslaughter indictment against defendant where (1) the issue to be concluded under the first indictment, whether defendant was guilty of the manslaughter of a fetus, was the same as the issue to be concluded under the second indictment, even if the victim was described in the second indictment as an unborn child; (2) the issue of whether the indictment stated a crime which amounted to manslaughter was litigated, since the judge, in his order dismissing the first indictment, specifically stated that an element of the crime of manslaughter, the death of a human being, was missing from the first indictment; and (3) the issue was material and relevant' to the disposition of the first indictment. N.C.G.S. § 15A-954(a)(7).

APPEAL by the State from *Sitton, Judge.* Judgment entered 11 November 1987 in Superior Court, CALDWELL County. Heard in the Court of Appeals 1 November 1988.

On 27 October 1986, Bynum Parsons was indicted in case 86CRS9062 for the ·manslaughter of "a nameless living female fetus which was in the body of its mother Brenda Watson Greer, and due to be delivered on or about November 6, 1986." The State alleged that the fetus died as a result of a car accident which occurred on 19 October 1986.

Mrs. Greer, eight months pregnant, was driving her car on a public highway when it was struck head-on by a vehicle driven by the defendant. It is alleged that the defendant was speeding, on the wrong side of the road, and had an elevated blood alcohol level when the accident happened. Immediately following the accident, Mrs. Greer was taken to the hospital. Ten hours later she delivered a stillborn baby girl. The State alleges that the cause of death was the separation of the umbilical cord from the placenta as a result of the collision.

By order dated 20 January 1987, Superior Court Judge W. Terry Sherrill dismissed the indictment. The contents of the order are set out in the opinion below. The State appealed from the dismissal of the indictment. On 11 June 1987, the State filed a

notice of dismissal in the Court of Appeals and the appeal was dismissed.

On 10 August 1987, the State issued a new indictment in 87CRS5116 against Bynum Parsons for manslaughter alleging that Parsons did "kill and slay a living human being, Kandy Renae Greer, a viable but unborn female child." On 4 September 1987, the defendant moved to dismiss the second indictment arguing that Judge Sherrill's order of 20 January 1987 "ruled as a matter of law in *State v. Bynum H. Parsons* (86CRS9062), a case arising out of the same factual circumstances, that an indictment for manslaughter based on essentially the same factual allegations be dismissed with prejudice . . . ."

Judge Claude S. Sitton received briefs from both parties on defendant's motion to dismiss the second indictment. On 11 November 1987, Judge Sitton granted Parsons' motion to dismiss finding that the new indictment must be dismissed pursuant to N.C.G.S. § 15A-954(a)(7). The State entered notice of appeal to the Court of Appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Joan H. Byers, for the State, appellant.*

*Carpenter, Wilson, Cannon & Blair, by Edward H. Blair, Jr., for defendant appellee.*

ARNOLD, Judge.

As a preliminary matter it is recognized that the State may appeal a motion to dismiss "when there has been a decision or judgment dismissing criminal charges as to one or more counts." N.C.G.S. § 15A-1445(a)(1).

The State contends that Judge Sitton erred in dismissing the indictment in 87CRS5116 pursuant to N.C.G.S. § 15A-954(a)(7), which requires dismissal of an indictment when the doctrine of collateral estoppel precludes further litigation of an issue essential to a successful prosecution. The State argues that the original indictment was dismissed because of mere technical defects in the indictment. For the reasons set out below we disagree with the State and affirm the order of the trial judge.

In his order to dismiss, Judge Sitton relied on N.C.G.S. § 15A-954(a)(7):

(a) The court on motion of the defendant must dismiss the charges stated in the criminal pleading if it determines that:

> (7) An issue of fact or law essential to a successful prosecution has been previously adjudicated in favor of the defendant in a prior action between the parties.

The statute relied on is a codification of the common law principle of collateral estoppel as it is applied in criminal cases. *See Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed. 2d 469 (1970); *United States v. Oppenheimer*, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161, 3 A.L.R. 516 (1916). The doctrine of *res judicata* and the related doctrine of collateral estoppel apply in criminal as well as civil cases. *Id. Accord State v. McKenzie*, 292 N.C. 170, 176, 232 S.E. 2d 424, 427 (1977).

> *Res judicata* and collateral estoppel are subsets of the constitutional protection against double jeopardy. *Id.* "[T]he term '*res judicata*' embraces in its entirety the effect of a judgment as preventing the parties and their privies from relitigating in a subsequent proceeding a controversy or issue already decided by a former judgment." 9 A.L.R. 3d 203, 213.

> The rule of collateral estoppel is an aspect of the broader principle of res judicata . . . .

> [T]he doctrine of collateral estoppel operates, following a final judgment, to establish conclusively a matter of fact or law for the purposes of a later lawsuit on a different cause of action between the parties to the original action. *Id.* at 213-14.

Simply said, *res judicata* precludes the claim or cause of action, collateral estoppel precludes previously litigated issues of fact or law. *Ashe*. A plea of *res judicata* is waived unless it is properly raised in the trial court. *McKenzie* at 176, 232 S.E. 2d at 428.

> This is not a case of collateral estoppel, the State contends, because no issue of law was decided by Judge Sherrill's dismissal of the first indictment. Instead, it is the State's position that the first indictment was dismissed because of a technical defect in the indictment. Justice Holmes faced a similar determination in *Oppenheimer*:

> > Of course, the quashing of a bad indictment is no bar to a prosecution upon a good one, but a judgment for the defend-

ant upon the ground that the prosecution is barred goes to his liability as matter of substantive law, and one judgment that he is free as matter of substantive law is as good as another.

*Oppenheimer* at 87, 37 S.Ct. at 69, 61 L.Ed. at 164. (Defendant had pled the statute of limitations.)

In support of its argument the State has cited several cases in which it was allowed to reindict following a motion to quash. Unlike the situation here, these cases concern indictments which fail to inform the defendant of the charges against him because of "faulty procedure or technical defects in the wording of the indictment." *United States v. Cejas*, 817 F. 2d 595, 600 (9th Cir. 1987); *see, e.g., State v. Ingram*, 271 N.C. 538, 157 S.E. 2d 119 (1967) (general words describing property taken in larceny indictment were insufficient to protect defendant from subsequent prosecutions); *State v. Sealey*, 41 N.C. App. 175, 254 S.E. 2d 238 (1979) (variance was fatal when indictment alleged sale to one person and proof tended to show sale only to another). The State has also been allowed to reindict when the defendant has been able to prove racial discrimination in the selection of a grand jury foreman. *State v. Cofield*, 320 N.C. 297, 309, 357 S.E. 2d 622, 629 (1987).

In *State v. Barnes*, 253 N.C. 711, 117 S.E. 2d 849 (1961), the indictment for obscenity charges lacked detail and was insufficient "to inform defendant of the accusation against him, and to protect him against a subsequent prosecution for the same offense." *Id.* at 718, 117 S.E. 2d at 853. Unlike *Barnes*, we find that the wording of the first indictment is accurate enough to inform the defendant of the charge against him, and precise enough to protect him from a second indictment on what amounts to the same charge. Whether defendant is indicted for manslaughter of a fetus, as the victim is described in the first indictment, or an unborn child, as the victim is described in the second indictment, the crime alleged is the same.

If the doctrine of collateral estoppel is to preclude a second indictment it is necessary to determine if dismissal of the first indictment was based on a substantive issue of law, in this case, a determination that manslaughter of a fetus is not a crime in North Carolina. "A dismissal of an indictment on the merits . . .

·precludes a trial on a reindictment for the same charge." *Cejas* at 600.

The North Carolina Supreme Court has set out a test for whether collateral estoppel applies to a specific issue:

> (1) The issues to be concluded must be the same as those involved in the prior action; (2) in the prior action, the issues must have been raised and actually litigated; (3) the issues must have been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action must have been necessary and essential to the resulting judgment.

*King v. Grindstaff*, 284 N.C. 348, 358, 200 S.E. 2d 799, 806 (1973). *See McKenzie* at 176, 232 S.E. 2d at 427-28.

Applying the *King* test we find that the issue to be concluded under the first indictment, whether Parsons is guilty of the manslaughter of the fetus is the same as the issue to be concluded under the second indictment. Second, we find that the issue of whether the indictment stated a crime which amounted to manslaughter was litigated. Third, the issue is material and relevant to the disposition of the first indictment.

This case turns on the last part of the test which requires a finding that the issue was "necessarily" determined by Judge Sherrill as the basis for his order dismissing the first indictment. A similar problem arose in *McKenzie* where the court found that the trial court was precluded in a manslaughter case from submitting instructions to the jury concerning defendant's alleged operation of a motor vehicle with an elevated blood alcohol content when the defendant had earlier been acquitted of that charge. In its analysis of the collateral estoppel issue the *McKenzie* court stated:

> It seems to us that the acquittal of a defendant even in district court precludes the state from relitigating in a subsequent prosecution any issue *necessarily* decided in favor of the defendant in the former acquittal. Sometimes it is difficult to ascertain whether on a general verdict the issue in question was necessarily decided in favor of defendant. As ·the Supreme Court in *Ashe* noted, it may require an ex-

amination of the entire record of the earlier proceeding. (Emphasis in original.)

*McKenzie* at 175, 232 S.E. 2d at 428.

Our examination includes a review of the record of the hearing and Judge Sherrill's 20 January 1987 order to dismiss. That order states:

> The allegations of the October 27, 1986 Bill of Indictment fails to sufficiently set out a charge of manslaughter against this defendant in that the alleged victim was "a nameless living female fetus which was in the body of its mother, Brenda Watson Greer, and due to be delivered on or about November 6, 1986."
>
> Said Bill of Indictment fails, as a matter of law, to allege a material element of the crime of manslaughter, that is, that the defendant did kill another living human being.

A review of the record shows that after Judge Sherrill heard arguments on whether manslaughter of a fetus is a crime he concluded that the defendant was correct:

> Well, the law in this state, the statute with respect to this particular issue is as it seems, that you suggest, (Defendant), and that (Prosecutor), . . . apparently concedes it to be. I am bound to apply the law as it exist [sic] at the present time. Despite anything else, really despite the facts that I heard [regarding the facts of the accident] and looking at the indictment, the face of the indictment, which is alleging that the victim was a nameless living female fetus in the body of its mother, Brenda Watson Greer, and due to be delivered on or about November 6, 1986. On the face of the indictment itself the court concludes that it does fail to allege a crime, recognized as a crime in this state.

Foremost in Judge Sherrill's reasoning was that the indictment failed to allege a North Carolina crime. In his order, he specifically states that an element of the crime of manslaughter, the death of a human being, was missing from the first indictment. The State's attempt to recast the description of the victim in the second indictment cannot change the fact that Judge Sherrill made a final determination on the merits of the first indictment.

Therefore the State is precluded from bringing a second indictment.

The *Ashe* court notes at its conclusion that the State in its brief conceded that it treated the first trial as no more than a "dry run" for the second prosecution:

> "No doubt the prosecutor felt the state had a provable case on the first charge and, when he lost, he did what every good attorney would do—he refined his presentation in light of the turn of events at the first trial." But this is precisely what the constitutional guarantee forbids.

*Ashe* at 447, 90 S.Ct. at 1189, 25 L.Ed. 2d at 477. The quoted text aptly fits the situation here.

This case deals entirely with the subject of collateral estoppel. We make no judgment of how this Court would have ruled had the State pursued its first appeal of Judge Sherrill's order, rather than Judge Sitton's order.

The order of the trial court is

Affirmed.

Judges WELLS and COZORT concur.